IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AFFORDABLE PORTABLE STRUCTURES, INC. and JFJ GROUP, INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:16-CV-1267-RP |
| THE CINCINNATI INSURANCE COMPANY and ALFRED GRAY, | § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court in the above-styled cause is the Motion to Remand filed by Plaintiffs Affordable Portable Structures, Inc. and JFJ Group, Inc. (collectively "Plaintiffs"). (Dkt. 6). Having considered the parties submissions and the relevant law, the Court finds that the motion should be granted.

**BACKGROUND**

Plaintiffs are entities incorporated under the laws of the State of Texas with their principal places of business in Austin, Texas. Defendant Cincinnati Insurance Company ("Cincinnati") is an insurance company incorporated under the laws of the State of Ohio. Its principal place of business is in Fairfield, Ohio. Defendant Alfred Gray is an individual adjuster employed by Cincinnati. He resides in or around Austin, Texas.

Plaintiffs allege that they purchased property insurance from Defendant Cincinnati for the policy period between November 15, 2014, and November 15, 2015. On or around May 23, 2015, while that policy was active, a tornado or windstorm allegedly caused substantial damage to Plaintiffs' two buildings. Plaintiffs assert that they reported this loss to Cincinnati and its agents.

Cincinnati then assigned Alfred Gray to investigate the loss and adjust the claim. Cincinnati and Gray thereafter hired Rimkus Consulting Group ("Rimkus") to assess the potential damage to Plaintiffs' buildings. According to Plaintiffs, Rimkus is known to provide results-oriented reports that favor insurance companies and minimize damage estimates. It was for that reason, Plaintiffs believe, that Defendants hired Rimkus.

The report that Rimkus ultimately provided allegedly downplayed the damage sustained by Plaintiffs' buildings during the storm. As a result, Plaintiffs assert that they hired an engineer, James Dixon ("Dixon"), to assess the damage. The results of Dixon's investigation differed dramatically from those of Rimkus's. For example, whereas the Rimkus report found that the framing, wall and roof panels, and overhead doors were not damaged during the storm, Dixon found that, as a result of the storm, the frames were not plumb, panels and rakes were misaligned, and screws were missing and loose, causing water damage and weakening structural integrity. A consultant hired by Plaintiffs estimated that it would cost $698,111.69 to repair the storm damage that Dixon had identified.

Despite the extensive damage, Plaintiffs allege that Defendant Gray prepared an estimate putting the cost of repair at only $25,935.38—less than 3.5% of the figure estimated by Plaintiffs' consultant. Plaintiffs allege the Gray is an experienced adjuster and, as such, knew or should have known that the Rimkus report vastly underestimated the amount of damage caused to Plaintiffs' buildings. Accordingly, Plaintiffs assert, Gray's decision to conduct no further investigation was unreasonable and did not constitute a good faith attempt to effectuate a prompt, fair, and equitable settlement.

Plaintiffs filed this lawsuit against Defendants in state court on October 19, 2016. They assert claims against both Defendants under the Texas Insurance Code and the Texas Deceptive Trade Practices Act, and against Cincinnati for breach of the common law duty of good faith and fair dealing. On December 2, 2016, Defendants removed the action on the basis of this Court's

diversity jurisdiction. Though Gray, like Plaintiffs, is a citizen of Texas for jurisdictional purposes, Defendants argue that he was fraudulently joined in this action to defeat diversity. Plaintiffs filed a motion to remand the action on December 27, 2016. They assert that they have alleged a viable claim against Gray and that this Court therefore lacks diversity jurisdiction.

## LEGAL STANDARD

A defendant in a civil action filed in state court may remove the action to the federal district court if the action is within the original subject-matter jurisdiction of the federal courts. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over state-law controversies in which there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Where a plaintiff has joined both diverse and non-diverse defendants, the diverse defendant may still remove the case on the basis of diversity jurisdiction by showing that the non-diverse defendant was improperly joined. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). The improper joinder doctrine is a narrow exception to the rule of complete diversity. It allows the court to "look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 745 (2014) (discussing the diversity jurisdiction statute); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573–72 (5th Cir. 2004) (holding that the doctrine rests on the "statutory underpinnings" of the diversity jurisdiction and removal statutes).

A removing party may show improper joinder by demonstrating either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Cuevas*, 648 F.3d at 249 (citing *Smallwood*, 385 F.3d at 573). Under the second prong, the inquiry is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. The standard is similar to that under Federal Rule of Civil Procedure 12(b)(6). *Travis*

3

*v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003). The court looks at the complaint to determine whether there are sufficient factual allegations of "specific actionable conduct" to support the asserted causes of action. *First Baptist Church of Mauriceville, Tex. v. GuideOne Mut. Ins. Co.*, No. 1:07-CV-288, 2008 WL 4533729, at *4 (E.D. Tex. Sept. 29, 2008). Conclusory allegations are insufficient. *Id.* The removing party bears the burden of establishing improper joinder and all contested factual issues and ambiguities of state law are resolved in favor of the plaintiff. *Gasch v. Harford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

## DISCUSSION

**1.     Plaintiffs' Insurance Code Claims**

The Texas Insurance Code has several provisions forbidding unfair and deceptive practices in the business of insurance. One of these, section 541.060, forbids "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear ," among other prohibited practices. Tex. Ins. Code § 541.060(a)(2). The Insurance Code provides a private right of action against any person who engages in these practices. *Id.* § 541.151.

Defendants do not dispute the general proposition that insurance adjusters like Gray risk personal liability for violations of the Texas Insurance Code. (*See* Defs.' Response, Dkt. 6, at 4). Rather, the disagreement between the parties concerns the circumstances under which personal liability attaches. Defendants' argue that Plaintiffs have not asserted an appropriate individual claim against Gray because they have not alleged that that Gray acted outside the scope of his employment or that Gray caused an injury to Plaintiffs that is distinct from Cincinnati's actions. Plaintiffs respond that such a showing is not required; rather, according to Plaintiffs, insurance adjusters are personally liable for their role in violating the Texas Insurance Code whether they act within the scope of their employment or not.

4

The parties have identified an active conflict among the federal courts interpreting Texas law. Following the Texas Supreme Court's decision in *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex. 1998), which established that insurance agents may be held individually liable for violations of the Insurance Code, the federal courts have struggled to define the preconditions of that liability. It is clear that an individual agent may be personally liable "notwithstanding the fact that he acted within the scope of his employment." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 386 (Tex. 2000). However, some federal courts have required the plaintiff to show that the adjuster has caused "an injury distinguishable from the insure[r]'s actions." *See, e.g., Aguilar v. State Farms Lloyds*, No. 4:15-CV-565-A, 2015 WL 5714654, at *3 (N.D. Tex. Sept. 28, 2015). Other courts have held that a plaintiff may validly assert identical claims against the insurer and its agent—that is, without the need to establish an independent injury. *See, e.g., Eduardo v. Great Lakes Reinsurance (Uk) PLC*, DR-15-CV-00073-AM/VRG, 2016 WL 4371946, at *6 (W.D. Tex. Jan. 19, 2016).

There is reason to doubt the more exacting requirements set out in cases such as *Aguilar*. First, the Texas Legislature has instructed courts to liberally construe to provisions of Chapter 541 of the Insurance Code to effectuate its underlying purpose, Tex. Ins. Code § 541.008, which, according to the Texas Supreme Court, is "to comprehensively regulate and prohibit deceptive insurance practices"—an aim achieved by broadening liability to the agents of insurers. *Garrison*, 966 S.W.2d at 485–86. Second, the provisions of the Insurance Code were recognized as a departure from traditional agency principles under the common law, *Casteel*, 22 S.W.3d at 385, but a "distinct injury" requirement hearkens back to traditional rules of liability within the employer-employee relationship. *See, e.g., Leicht v. Hornsby*, 935 S.W.2d 114, 117 (a corporate agent may be personally liable for negligence if he violates a duty that is distinct from the duties owed by his employer).

Ultimately, however, it is unnecessary for this Court to resolve the issue. As noted above,

5

this Court must resolve all ambiguities of state law in favor of remand. *Gasch*, 491 F.3d at 281. Thus, if the Court determines that Plaintiffs have alleged a plausible claim against Gray—without regard to whether the Plaintiffs allege a distinct injury—the Court will remand the case to allow the state courts to resolve this ambiguous issue of state law.

The Court finds that Plaintiffs have indeed alleged specific conduct of Gray that plausibly suggests liability under the Insurance Code. For example, Plaintiffs allege that Gray hired an engineering firm with knowledge that the firm would unfairly investigate Plaintiffs' claims and minimize Cincinnati's liability. Thereafter, according to Plaintiffs, Gray prepared his estimate on the basis of a report that he, due to his long experience, knew was inadequate and unfair. This allegedly led to Cincinnati's offering to compensate Plaintiffs for only a small fraction of the damages they sustained. This plausibly alleges that Gray did not attempt in good faith to effectuate a fair and equitable settlement of Plaintiffs' claim. *See* Tex. Ins. Code § 541.060(a)(1)(3); *Blanchard v. State Farm Lloyds*, 206 F. Supp. 2d 840, 847 (S.D. Tex. 2001) (holding allegations that adjuster hired biased engineering firm, disregarded evidence of damage, and failed to conduct a fair investigation showed reasonable possibility of actionable violation Texas Insurance Code). Taking these allegations as true and drawing all reasonable inferences in favor of the Plaintiff, the Court concludes that Plaintiffs have stated a claim sufficient to withstand a Rule 12(b)(6)-type inquiry. *See Travis*, 326 F.3d at 648.

Having found that a plausible claim exists against Gray, remand is appropriate.

2.   **"Badges of Improper Joinder"**

As an argument apart from whether Plaintiffs have a viable claim against Gray under the Insurance Code, Defendants assert that so-called "badges of improper joinder" are present in this case and favor dismissal of Gray from this action.

Defendants are correct that some district courts have considered certain characteristics of a lawsuit—apart from the viability of the claims—to be relevant to the issue of improper joinder. *See,*

*e.g.*, *Plascencia v. State Farm Lloyds*, No. 4:14-CV-524-A, 2014 WL 11474841, at *6–7 (N.D. Tex. Sept. 25, 2014). In *Plascencia*, for example, the Court identified several such "badges" that, if present, favor a finding of improper joinder. *Id.* These include the use of form complaints and motions, a failure to effectuate service of process on the non-diverse party, and the lack of any plausible reason for suing the non-diverse defendant other than to defeat federal jurisdiction. *Id.*

This Court can find no Fifth Circuit or Supreme Court precedent endorsing consideration of these factors where the plaintiff has otherwise stated a valid claim against a non-diverse defendant—indeed, *Plascencia* did not purport to rely on such authority, *see id.*[1]—and the Court is not certain that these factors are relevant. The Fifth Circuit has identified the pertinent inquiry as whether "(1) the plaintiff *has* stated a claim against a defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (emphasis in original). These "badges" have no bearing on whether there was fraud in pleading the jurisdictional facts establishing diversity-of-citizenship, and they have nothing to do with whether the plaintiff's allegations—whether or not contained in a boilerplate complaint—state a valid claim.

Additionally, consideration of these factors strikes the Court as unnecessary in most instances. The "badges" may often be present in situations where the plaintiff has no reasonable possibility of recovery against the non-diverse defendant, but in those cases it is the failure of the claim—not the presence of "badges"—that warrants denial of a motion to remand. *See Int'l Energy*, 818 F.3d at 199. Indeed, *Plascencia* itself—and each case it relied on—had already found that the

---

[1] *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999), is the sole Fifth Circuit case cited in this portion of the *Plascencia* opinion. After holding that the plaintiff's complaint did not state a valid claim against the non-diverse defendant, the *Griggs* court stated in dicta that the plaintiff's failure to effect service of process on that defendant suggested that the plaintiff had no intent to pursue its claims against her. *Id.* at 699. This dicta was neither an instruction to district courts to consider the status of service in each case, nor does it illustrate any workable standard by which a district court may assess how many "badges" must be present before denial of remand is appropriate. *See id.* In any event, this "badge" is not present in the present case. (*See* Return Receipt, Dkt. 3, at 4).

7

plaintiff's complaint itself was deficient before considering these "badges." *Plascencia*, 2014 WL 11474841, at *6; *Griggs v. State Farm Lloyds*, 181 F.3d 694 at 699; *Jimenez v. Travelers Indem. Co.*, No. H-09-1308, 2010 WL 1257802, at *5 (S.D. Tex. Mar. 25, 2010); *Struder v. State Farm Lloyds*, No. 4:13cv413, 2014 WL 234352, at *4 (E.D. Tex. Jan. 21, 2014); *DeCluette v. State Farm Lloyds*, No. 3:12-CV-4449-B, 2013 WL 607320, at *3 (N.D. Tex. Feb. 2013); *First Baptist Church*, 2008 WL 4533729, at *5 (relying on the dicta of *Griggs* and finding that plaintiff intended to pursue its claims before denying remand on the basis of insufficient allegations); *Dougherty v. State Farm Lloyds*, No. 401CV0611A, 2001 WL 1041817, at *2 (N.D. Tex. Aug. 30, 2001). These cases provide no support for the proposition that a court should nonetheless dismiss an otherwise seemingly valid claim because it has satisfied itself that a sufficient number of "badges" are present.

In short, having found that Plaintiffs have established a possibility of recovery against Gray, the Court declines to consider these other factors.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand, (Dkt. 5), and **ORDERS** that this case is remanded back to the 200th District Court of Travis County, Texas, in Cause No. D-1-GN-16-005273.

**SIGNED** on May 23, 2017.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE